2007 OK CIV APP 79

**CHESAPEAKE ENERGY MARKETING, INC., Plaintiff/Appellee,**

v.

**STATE BOARD OF EQUALIZATION and The Oklahoma Tax Commission, Defendants/Appellants.**

**No. 104,391.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 15, 2007.

William K. Elias, Amy Elizabeth Wellington, Linda Jo Blan–Byford, Elias, Books, Brown & Nelson, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Lynn C. Rogers, Larry D. Patton, Assistant Attorney General, Oklahoma City, OK, for Defendants/Appellants.

CAROL M. HANSEN, Presiding Judge.

¶ 1 Defendant/Appellants, State Board of Equalization and Oklahoma Tax Commission (collectively State), seek review of the trial court's order granting summary judgment in favor of Plaintiff/Appellee, Chesapeake Energy Marketing, Inc. (CEMI), declaring CEMI is not a public service corporation for purposes of ad valorem taxation. We affirm, holding State's attempt to reclassify CEMI violated the legislative moratorium on changing the treatment for assessment of gas gathering system assets in 68 O.S.Supp.2002 2851.3.

¶ 2 In 2004, CEMI sued State seeking a declaratory judgment State had exceeded its jurisdiction by attempting to centrally assess and tax CEMI's gas gathering lines and equipment pursuant to procedures applicable to public service corporations. It sought to enjoin State from exercising jurisdiction over CEMI in assessing ad valorem taxes by treating CEMI as a public service corporation, and it requested refund of taxes paid under protest for 2004. CEMI filed similar suits for tax years 2005 and 2006, and the matters were consolidated.

¶ 3 State filed a motion for summary judgment seeking a declaration CEMI was a public service corporation as defined by Okla. Const. Art. IX, § 34, and 68 O.S.2001 2808 for purposes of ad valorem taxation. It asserted CEMI was engaged in business in Oklahoma including gathering of natural gas, and had laid its pipeline under public highways in more than ten counties in Oklahoma. In support, State attached CEMI's responses to requests for admission. State argued the term "public service corporation" must be broadly construed. It cited *Dobson Fiber Co. v. State Board of Equalization (Dobson Fiber)*, 2001 OK CIV APP 85, 27 P.3d 1029, for the proposition a company is a public service corporation if it lays its lines under public highways and its property is spread out among several counties, and argued CEMI should be treated like Dobson and declared to be a public service corporation.

¶ 4 CEMI responded and moved for summary judgment, seeking a declaration it was not a public service corporation for ad valorem purposes. It asserted it was a gas gathering company and was locally assessed from 1993 until May 2004, when the Ad Valorem Division of the Oklahoma Tax Commission directed it to render its property for central assessment as a public service corporation. It asserted its function was to lay pipelines to connect wells operated by its parent company to pipelines of purchasers, and did not furnish any products to the public. CEMI also asserted it had never used the power of eminent domain to occupy a public highway but had laid its lines under public highways pursuant to road crossing permits available to the general public. In support, CEMI attached the affidavit of its president. CEMI discussed the history of litigation and legislation regarding gas gatherers, including a legislative stay changing the manner of assessment of gas gathering system assets pending completion of a task force study.

¶ 5 In response, State submitted, among other things, the affidavit of its Administrator of the Ad Valorem Division Public Service Section for the Oklahoma Tax Commission, stating CEMI purchased Enco Gas Gathering Company (Enco) on July 31, 2003. He stated Enco was a public service corporation that the State Board of Equalization centrally assessed from 1996 until 2003, and the 2004 assessment of CEMI property by the State Board of Equalization included the former property of Enco.

¶ 6 After further briefing and a hearing, the trial court denied State's motion for summary judgment and granted CEMI's motion. It found *Dobson Fiber* was distinguishable from the present case and 68 O.S.Supp.2006

2807 (12)(b), 68 O.S.2001 2808, and 68 O.S.Supp.2002 2851.3 were controlling. The trial court declared CEMI was not a public service corporation for the purposes of ad valorem taxation. State appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla.Sup.Ct.R. 1.36, 12 O.S.Supp.2003, Ch. 15, App. 1.

¶ 7 Because a grant of summary judgment involves purely legal determinations, we will review the trial court's decision under a *de novo* standard. *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051, 1053. Summary judgment is appropriate only when there is no substantial controversy as to any material fact and one of the parties is entitled to judgment as a matter of law. 12 O.S.Supp. 2002, Ch. 2, App. 1, Rule 13.

¶ 8 The Legislature has plenary power to tax, subject only to constitutional restrictions and the will of the people expressed through elections. *In re Oneok Field Services Gathering, LLC,* 2001 OK 116, 38 P.3d 900, 903. The Oklahoma Constitution authorizes the Legislature to classify property for purposes of taxation. Okla. Const. Art. X, § 22. Property is taxed ad valorem unless the Legislature provides a substitute tax. *Save Ad Valorem Funding For Students v. Oklahoma Dept. of Environmental Quality,* 2006 OK CIV APP 53, 135 P.3d 823, 826.

¶ 9 Generally, the county assessor has the duty of locally assessing property taxed ad valorem. 68 O.S.2001 2819. However, the property of railroads and public service corporations is centrally assessed by the State Board of Equalization. Okla. Const. Art. X, § 21(A), and 68 O.S.2001 2847 (A). The definition of public service corporations in Okla. Const. Art. IX, § 34, and 68 O.S.2001 2808 (A)(1) includes:

all transportation and transmission companies, all gas, electric, heat, light and power companies, and all persons, firms, corporations, receivers or trustees engaged in said businesses, and all persons, firms, corporations, receivers or trustees authorized to exercise the right of eminent domain or having a franchise to use or occupy any right of way, street, alley or public highway, whether along, over or under the same, in a manner not permitted to the general public.

¶ 10 Whether gas gatherers are public service corporations has been the subject of recent litigation and legislation. Justice Kauger, in a concurring opinion in *In re Oneok Field Services Gathering, LLC (Oneok),* 2001 OK 116, 38 P.3d 900, 907–909 (footnotes omitted), discussed the litigation history:

¶ 3 We arrive at the point we find ourselves today via an unpublished Court of Civil Appeals opinion promulgated on April 5, 1996–*Texaco Exploration & Prod., Inc. v. State Bd. of Equalization,* No. 85,256 (1996) cert. denied. The sole issue considered in the cause was whether Texaco Exploration was a public service corporation for purposes of ad valorem taxation under 68 O.S.1991 2808. Finding that Texaco Exploration was not a public service corporation, the appellate court determined that Texaco Exploration should be assessed by local county assessors rather than by the State Board of Equalization.

¶ 4 Before 1994, Texaco Exploration, a subsidiary of Texaco, Inc., was locally assessed. However, in 1994, the Oklahoma Tax Commission learned that Texaco Exploration owned and was operating gas gathering pipelines. Determining that Texaco Exploration was a public service corporation, the Tax Commission ordered Texaco Exploration to file reports for the purpose of central assessment. The Tax Commission recommended a value to the State Board of Equalization which was certified for central assessment. Texaco Exploration filed an action for declaratory and injunctive relief asserting that it was not a public corporation subject to assessment by the State Board of Equalization. Both the trial court and the Court of Civil Appeals agreed and county assessors were left with the responsibility of assessing property owned by the gas gathering companies.

¶ 5 The Legislature apparently recognized that the Texaco Exploration ruling had the potential of causing some confusion as to what properties should be taxed centrally

by the State Board or locally by county assessors.... Thereafter, the Legislature amended the statute relating to assessments for public service corporations to provide that any gas gathering system assessed by the State Board of Equalization after January 1, 1997, would continue to be assessed by the State Board through ad valorem tax year 1998. The amendment created a status quo—all pipeline gathering companies subject to central assessment as public service corporations maintained that status through the 1998 tax year....

¶ 6 Following the Texaco Exploration ruling, it appears that public service corporations like Oklahoma Natural Gas began to spin off gathering companies similar to the appellee, Oneok Field Services Gathering, LLC.... These gathering companies then began to take advantage of scheduling their property under the personal property statutes, omitting the value of rights of way on the basis that they were real property interests taxable to the fee owner. Because these gathering companies were not considered public service corporations, they were no longer required to schedule "all" property interests for assessment as public service corporation property.

¶ 11 After the Supreme Court issued its opinion in *Oneok,* the Legislature returned to the issue of whether gas gatherers should be locally or centrally assessed. It created a Task Force on Valuation of Gas Gathering Systems Assets, consisting of three legislators from each chamber, to study the issue and make recommendations. Laws 2002, c. 265, § 1, emergency effective May 17, 2002. The task force's report originally was due December 31, 2003, but the due date twice has been extended, and now is set for December 31, 2007. 68 O.S.Supp.2006 2851.2, and Laws 2006, c. 272, § 20. At the same time the Legislature created the task force, it imposed a moratorium on changes in the treatment of gas gathering assets, providing in 68 O.S.Supp.2002 2851.3 (B), "Effective January 1, 2003, there shall be no changes in the determination of whether gas gathering system assets are locally assessed or centrally assessed and the treatment of such assets

for the January 1, 2002, assessment year shall be maintained and preserved."

¶ 12 In the present case, CEMI was locally assessed for the January 1, 2002, assessment year, while Enco, treated as a public service company, was centrally assessed during that time period. On its face, § 2851.3 seeks to preserve the status quo in the treatment of gas gathering systems *assets* as of January 1, 2002. CEMI, having acquired Enco, now possesses some gas gathering assets that were locally assessed on that date and some that were centrally assessed.

¶ 13 Section 2851.3 does not address this situation. When legislative intent cannot be ascertained from the language of a statute, we must apply rules of statutory construction. The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, looking first to the language of the statute. *YDF, Inc. v. Schlumar, Inc.,* 2006 OK 32, 136 P.3d 656, 658. Constitutional and statutory provisions on the same subject matter should be construed together as part of a coherent system. *Cowart v. Piper Aircraft Corp.,* 1983 OK 66, 665 P.2d 315, 317.

¶ 14 Section 2851.3 could be construed to direct the State Board of Equalization to assess the assets CEMI acquired from Enco and the county assessor to assess CEMI's remaining assets. However, the State Board of Equalization's authority under the Oklahoma Constitution, Art. X, § 21, is to "assess all railroad and public service corporation property." Its authority is defined by the class of owner, not the class of property. It does not have the authority to assess the property of owners other than railroads and public service corporations. In order to construe § 2851.3 consistently with the Oklahoma Constitution and to give effect to the legislative intent of preserving the 2002 status quo, we must interpret § 2851.3 as prohibiting any change in the treatment of companies owning gas gathering assets.

¶ 15 In 2002, Enco was assessed centrally as a public service corporation, while CEMI

was assessed locally and not treated as a public service corporation. Following Enco's purchase, Enco ceased to exist and CEMI is the surviving company. Therefore, it is CEMI's status quo that must be preserved. State's attempt to reclassify CEMI as a public service corporation for ad valorem tax treatment violated the legislative moratorium of § 2851.3. Accordingly, we AFFIRM the trial court's order.

BUETTNER and BELL, JJ., concur.